IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA ANN DEAL, | No. 2:15-CV-2697-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 12) and defendant's cross-motion for summary judgment (Doc. 16).

/ / /

/ / /

/ / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on November 8, 1995.  In the application, plaintiff claims that disability began on October 1, 1990.  Following a hearing on March 4, 1997, plaintiff was determined to be disabled since November 8, 1995.  In April 2005, plaintiff was determined to no longer be disabled and benefits were discontinued in May 2005.

Plaintiff again applied for benefits on February 19, 2010, alleging that disability began on May 12, 2008.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 30, 2011, and continued to allow plaintiff to obtain representation.  Plaintiff appeared at a hearing on March 19, 2012, before Administrative Law Judge ("ALJ") K. Kwon and the record was held open thereafter for new evidence.  In a March 30, 2012, decision, the ALJ concluded that plaintiff was able to engage in a full range of unskilled work at all exertional levels with limitations in social functioning.

Plaintiff sought review and the Appeals Council remanded for further proceedings.  Another hearing was held before the same ALJ on December 10, 2013.  In a March 13, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s) since May 12, 2008: an affective disorder and an anxiety disorder;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: she can perform the full range of work at all exertional levels with the following non-exertional limitations: she can engage in simple, routine, unskilled tasks with a specific vocational preparation (SVP) code of '2' with no work with the public and no tandem team work with co-workers; and
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

1  After the Appeals Council declined review on November 3, 2015, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /
/ / /
/ / /
/ / /
/ / /

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly evaluate the opinions of Drs. Gottschalk, Mandelbaum, and Samuelson; and (2) the ALJ failed to properly assess her credibility.

### A. Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### 1. Dr. Gottschalk

As to Dr. Gottschalk, the ALJ stated:

> A State agency psychological consultant [Dr. Gottschalk] determined in June 2010 that an affective disorder and an anxiety-related disorder caused moderate limitations in maintaining social functioning, concentration, persistence, or pace (Exhibits B5F, B6F, and B7F).  The consultant opined that the claimant was able to do at least one to two-step tasks not requiring significant, close, or coordinated interaction with others (Exhibit B6F at 3).  In August 2010, another State agency psychological consultant affirmed the initial determination (Exhibit B8F).  The consultants' assessment is well explained, supported by the record as a whole, and consistent with the record as a whole.  Their assessment is given significant weight.

According to plaintiff:

> . . .The ALJ did note the opinions of Dr. Gottschalk that Deal could carry out one and two-step instructions. (Citation omitted).  The ALJ did not give a reason for rejecting that discrete opinion. . . .

Plaintiff misstates Dr. Gottschalk's opinion.  Contrary to plaintiff's assertion, the doctor did not opine that plaintiff is limited to, at most, one and two-step instructions.  A review of the record establishes that Dr. Gottschalk opined, as the ALJ correctly noted, that plaintiff can perform, at a minimum, one and two-step tasks.  This is indicated by the doctor's use of the phrase "at least," and is consistent with the doctor's assessment that plaintiff is not significantly limited in the ability to understand, remember, and carry out "very short and simple instructions."  The ALJ adequately accounted for Dr. Gottschalk's opinion in the finding that plaintiff is capable of simple, routine, unskilled tasks.

### 2. Dr. Mandelbaum

As to Dr. Mandelbaum, the ALJ stated:

> Psychiatrist Daniel Mandelbaum, M.D., consultatively evaluated the claimant in March 2010 (Exhibit B3F). The claimant informed Dr. Mandelbaum that she quit her job in 2007 because she was being harassed and abused, but would not elaborate about this when asked (further citations Exhibit B3F omitted). She reported that she was currently not taking any medications and had not for about a year, and she was not in counseling. Dr. Mandelbaum diagnosed the claimant with major depressive disorder, rule out bipolar disorder, panic disorder with agoraphobia, post-traumatic stress disorder, rule out dissociative disorder, and personality disorder with certain borderline features. He opined that the claimant would have significant difficulties on the job in terms of getting along with her employer or fellow employees and working under pressure. He assessed moderate to marked impairment with the abilities and aptitude necessary to do most jobs. Reduced weight is given to this examining source's assessment because it is inconsistent with and not supported by the record as a whole. Here, again, we have a doctor relying quite heavily, if not solely, on the subjective report of symptoms and limitations provided by the claimant, and he seemed to accept uncritically as true most, if not all, of what the claimant reported given the lack of support and detail from the substantial medical evidence for the degree of limitations endorsed by the CE. It is entirely unclear why she would have up to a marked impairment with the abilities and aptitude to do most jobs in 2010 when she was working at a semi-skilled job two years prior to the evaluation and successfully taking a college math course the following year after his evaluation. There is no intervening incident or explanation to account for such a dramatic reduction in her general abilities and aptitudes at that particular time.

The court does not agree with plaintiff that the ALJ erred with respect to evaluation of Dr. Mandelbaum's opinion. As indicated above, the ALJ may reject any medical opinion which is supported by minimal clinical findings. Such is the case with Dr. Mandelbaum's opinion. A review of the doctor's report reflects that the opinions stated therein are largely based on plaintiff's subjective reports. The doctor's five-page report contains only one paragraph referencing any objective clinical testing or findings, as follows:

> On cognitive testing, she knew the date, the President of the United States, and several past presidents. She could subtract serial 3s from 20, without error. She could spell the word "world" frontwards and backwards. She could remember 3 out of 3 objects after 5 minutes. . . .

///

These findings are patently inconsistent with Dr. Mandelbaum's extreme opinion that plaintiff lacks the aptitude or ability to perform most jobs.  Dr. Mandelbaum seems to acknowledge that his opinion is based on subjective rather than objective factors by stating that plaintiff's ability to work would be limited by her anxiety, depression, and dissociation symptoms and not clinical findings.  In fact, Dr. Mandelbaum references no specific clinical findings to support any of his conclusions, nor could he given that the only clinical findings on objective testing were unremarkable.

        3.    <u>Dr. Samuelson</u>

As to Dr. Samuelson, the ALJ stated:

> Melody Samuelson, Psy.D., consultatively evaluated the claimant in December 2013 at the request of the claimant's attorney (Exhibit B16F). Dr. Samuelson's source of information was the claimant, psychiatric treatment records from November 2012, and Dr. Mandelbaum's report (further citations to Exhibit B16F omitted).  During the exam, the claimant revealed to Dr. Samuelson a history of early childhood sexual, physical, and emotional abuse, panic attacks, and experiencing fear to leave her house.  She endorsed symptoms of post-traumatic stress, psychotic features in the form of auditory hallucinations, and dissociative experiences.  The claimant denied taking any psychotropic medications. She reported difficulty completing complex household tasks, such as bending, lifting, and standing for any period as a result of her chronic pain. Dr. Samuelson's diagnostic impressions were recurrent major depressive disorder, chronic post-traumatic stress disorder, panic disorder with agoraphobia, dissociative disorder, and a pain disorder.  She opined that the claimant was a mentally unstable individual who would not be appropriate for a work setting.  Dr. Samuelson also noted that she was not being treated currently and was not on any medications.  Dr. Samuelson opined that the claimant was severely impaired in the aptitudes and abilities necessary to do any type of work activity, but was capable of handing funds.  Dr. Samuelson's opinion is given little weight.  Were one to read over the treating social worker, Ms. Wantland's treatment notes, there would be a vast chasm of dissimilarity between the individual described by Dr. Samuelson and the individual presented in Ms. Wantland's notes.  The "paragraph B" examples above do not support Dr. Samuelson's extreme opinion.  In addition, as observed by the Appeals Council, the record does not reflect hospitalization or regular, let alone, ongoing treatment or even medications for mental conditions – or for chronic pain – during the period at issue.

/ / /

/ / /

Plaintiff argues that "[t]he ALJ's comment that progress notes do not support Dr. Samuelson's opinion could not be further from the truth." Plaintiff then cites the following pages from the record: 474, 502, 555, 556, 569, 581, 677, and 679.

Plaintiff's argument is unpersuasive. Rather than showing that the ALJ's assessment of Dr. Samuelson's opinion "could not be further from the truth," the cited portions of the record support the ALJ's conclusion. Specifically, the portions of the record cited by plaintiff reflect treatment notes documenting a reported history of childhood sexual abuse. While some of the cited treatment notes also document a depressed mood, none of the cited treatment notes describes any objective clinical findings.

**B.      Credibility Assessment**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

/ / /

/ / /

/ / /

/ / /

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

///

///

///

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ first summarized the evidence of limitations in plaintiff's activities:

> The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations. . .:no restriction in activities of daily living; mild to moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. For example, she cleans her house, shops, and cooks for herself (Exhibits B4E at 3, B6E at 1 and 3, B2F at 2, and B3F at 3). The claimant initially denied that she needed help with personal care, hygiene, or upkeep of a home (Exhibit B1D at 2). She lived alone (Exhibits B1D at 2, B4E at 1, B6E at 1, and B9F at 3). The claimant works in the yard, she reported dating, and talked about her pregnant daughter moving in with her (Exhibit B9F at 26). She testified that she could drive a car. She cares for her grandchildren from time to time (Exhibit B4E at 2). Except for not getting dressed on some days, she has

> no problems with personal care (Exhibits B4E at 2, B5E at 1, and B6E at 2). The claimant informed an examining source that when she mixed with the public, she experiences extreme anxiety and became dysfunctional (Exhibit B2F at 1). The claimant shops in stores, has a few friends she occasionally sees, and occasionally attends church (Exhibit B3F at 3). She reported a boyfriend in June 2011 that ended their relationship (Exhibit B9F at 34). She started an exercise class in January 2011 (Exhibit B9F at 14). The claimant reported she was dropping out of her classes because she felt crowded and blocked in when in class; but she would try to complete her computer class (Exhibit B9F at 26). The claimant took walks, danced, was very active in church, and went to church for fun (Exhibits B9F at 16, B10F at 6). She testified that she attended church every week, her friends come visit her, and she talks to people on the phone (*see also*, Exhibit B4E at 5). She can leave home alone and shop in stores (Exhibits B4E at 4, and B6E at 4). An examining source reported good concentration and memory but difficulty relating her history that concerned emotional issues (Exhibit B3F at 4). She enrolled in college classes in February 2011 (Exhibit B9F at 16). She testified that she took a math class at the community college in 2011 and earned a B. She said she reads the Bible. She denied the need for reminders to take care of personal needs, grooming, or to take medications (Exhibit 4E at 3). She was assessed having significant financial stressors but no problems accessing community resources (Exhibit B14F at 8). She went to Sacramento in January 2013 to perform community service in order to pay off a motor vehicle ticket; her son-in-law paid the ticket for her and she repaid him by working around the place (Exhibit B15F at 24). The claimant attended an uncle's funeral in Sacramento (Exhibit B15F at 31).

The ALJ then summarized plaintiff's testimony as follows:

> At the March 2012 hearing, the claimant testified that she lived with her son, a daughter-in-law, and three grandchildren; they all moved in to her home quite recently. She said she last worked in 2007 and that job ended when she had a nervous breakdown. She stated that she preferred to stay at home. The claimant stated that she only took ibuprofen and last took psychotropic medications in February 2012 – now more than two years ago.

> In December 2013, the claimant testified that she lived with her daughter, her boyfriend, and two young children. She said that she has a hard time answering questions when she is stressed. She stated that after the hearing in March 2012, she remained in bed for eight days. She said that she stopped working because she had a mental breakdown on the job. She testified that she helped around the house when she had the energy, she did not take care of her grandchildren, and her daughter did most of the cooking. She said that she could bathe and dress herself. She states that she experiences the most pain in her back, and also experienced pain in her shoulders, hips, feet, and ankles. The claimant denied that she could lift forty pounds and admitted that she could lift twenty-four pounds – but not repeatedly or even five times a day (Exhibit B13E).

In concluding that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible, the ALJ provided a detailed analysis of the objective findings, medical opinions, and third-party statements. Finally, the ALJ stated:

> In sum, the above residual functional capacity assessment is supported by the generally unremarkable objective evidence of record, limited treatment and findings; meanwhile, the claimant's level of activity and claimant's declination of further work up or treatment generally fails to support greater restrictions than those found herein. Moreover, the claimant's work history indicates even before her alleged onset date a history of minimal earnings that raises the question whether her continued unemployment is due to medical reasons (*see* Exhibits B2D-B5D, B7D-B8D). Careful consideration was also made to the claimant's subjective allegations, often vague and self-diagnosed, as well as the several third party reports (Exhibits 6E, 19E, 21E, 22E, and 30E); however sincere these reports may be, the lack of objective support and limited course of treatment while remaining fairly active limit their probative value and are otherwise reflected in the residual functional capacity to the extent they are reasonably supported.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her testimony as not credible. Specifically, plaintiff asserts that the "ALJ offered vague reasons for finding Ms. Deal not credible." The court does not agree. While plaintiff supplies a detailed summary of the law relating to credibility assessments in social security cases, she makes no attempt to explain how the ALJ in this case failed to correctly apply the law. The court finds that the ALJ's credibility assessment is supported by clear and convincing reasons. In particular, plaintiff's daily activities reflect functional capabilities which are transferrable to the wok setting, such as the ability to successfully complete a college-level math course.

///
///
///
///
///
///
///

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.    Plaintiff's motion for summary judgment (Doc. 12) is denied;

      2.    Defendant's cross-motion for summary judgment (Doc. 16) is granted; and

      3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 31, 2017

                                                          */s/ Craig M. Kellison*
                                                        **CRAIG M. KELLISON**
                                                        UNITED STATES MAGISTRATE JUDGE